UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

**BAKERY, CONFECTIONARY, TOBACCO**     File No.
**WORKERS AND GRAIN MILLERS**     Hon.
**INTERNATIONAL UNION AFL-CIO-CLC,**
**LOCAL NO. 70**,

    Plaintiff,

v.

**KELLANOVA (formerly KELLOGG COMPANY),**

    Defendant.
_____

# COMPLAINT
_____

## Complaint

Plaintiff Bakery, Confectionary, Tobacco Workers and Grain Millers International Union AFL-CIO-CIC Local No. 70 ("Plaintiff" or "Union"), by and through its attorneys, Pinsky Smith PC, states for its Complaint against Kellanova (formerly Kellogg Company) ("Defendant" or "Employer"):

### Jurisdiction, Venue, and Parties

1. Plaintiff brings this action to enforce the grievance and arbitration provisions of the Collective Bargaining Agreement ("CBA") between Plaintiff and Defendant, and to seek damages for Defendant's breach of contract through the violation of the CBA.

2. The Court has jurisdiction over this action pursuant to 29 U.S.C. 185(c).

3. Plaintiff Union is the exclusive representative for the purpose of collective bargaining with respect to rates of pay, wages, hours of employment, and other conditions of employment for all employees of Defendant Employer included in the bargaining unit.

4. Plaintiff maintains its principal office in Kent County, Michigan in the Western District of Michigan.

5. Defendant is a producer of snack and breakfast foods and is an employer in commerce. It conducts business in Kent County, Michigan in the Western District of Michigan.

6. Venue is proper within this judicial district under 29 U.S.C. § 185(a).

## Factual Allegations

7. Plaintiff and Defendant are parties to a 2023-2027 CBA.

8. Prior to the current CBA, Plaintiff and Defendant have been parties to previous CBAs, including a CBA ratified in August 2021 and retroactively effective from May 1, 2021 to April 30, 2023, and a CBA effective from May 1, 2017 to April 30, 2021.

9. Article 15 of the current CBA includes a grievance procedure, which states that, "If an agreement [on the grievance] cannot be reached within thirty [30] days following the date of the written grievance (unless such period is extended by mutual agreement between the parties), the matter will be submitted to arbitration."

10. The 2017 and 2021 CBAs between the parties contained the same contract provision that required unresolved grievances to be submitted to arbitration.

11. The parties regularly employ Article 15 and submit unresolved grievances to arbitration and have done so for decades.

12. Neither the current CBA, nor the previous two CBAs define "grievance."

13. On August 12, 2021, Plaintiff Union submitted grievance number 219 to Defendant Employer alleging violations of Article 5.5 of the 2017-2021 CBA, namely, that the Employer had violated the contract by not moving certain "Transitional Employees" to "Regular Full-Time Employees" pursuant to the contract provisions. On August 17, 2021, Plaintiff Union submitted grievance number 233 to Defendant Employer, alleging the same violation of the contract. Both grievances pertain to wage loss for a small group of employees and request money damages for relief for the alleged violation of the CBA.

14. At the time the grievances were filed, the parties were in the process of finalizing the 2021 CBA and ratifying the new contract.

15. In the 2021-2023 CBA, the parties agreed to change contract provisions related to "Transitional Employees" and their transition to become "Regular Full-Time Employees."

16. Defendant denied grievance 219, but at the time did not claim that the contract violation alleged in the grievance was not substantively arbitrable.

17. The parties continued to engage in discussions regarding a resolution of grievances 219 and 233 for the following approximate two-and-one-half years, with both acknowledging by word and actions that the grievances remained active and unresolved.

18. The parties specifically discussed resolution of the grievances during the summer 2023 contract negotiations and continued discussions until approximately mid-January 2024.

19. When it became apparent in January 2024 that the parties were not going to reach an agreement on grievances 219 and 233, Plaintiff Union notified Defendant Employer that it was submitting the unresolved grievances to arbitration, pursuant to Article 15 of the CBA.

20. Pursuant to practice of the parties, Plaintiff subsequently requested a panel of arbitrators from the Federal Mediation and Conciliation Service ("FMCS") and communicated with Defendant regarding the selection of an arbitrator on January 24, 2024.

21. Through counsel, on January 24, 2024, Defendant communicated that it intended to challenge the procedural timeliness of bringing the grievances to arbitration and indicated that two arbitrations would be necessary – first to address procedural arbitrability and second to address the merits of the grievance. Defendant did not, however, question the substantive arbitrability of the unresolved grievances.

22. Through subsequent communication with counsel on March 4, 2024 and March 6, 2024, Defendant stated that it had hired outside counsel who would work with Plaintiff counsel to strike the arbitrator panel.

23. Subsequently, on March 28, 2024, Defendant reversed its position on submitting the issue to an arbitrator, claiming the unresolved grievances were not

substantively arbitrable and refusing to continue with the arbitrator selection process.

24. At no point between the filing of the grievances in August 2021 and prior to March 2024 did Defendant claim that the contract violations alleged in the unresolved grievances were not substantively arbitrable.

25. At this time, the grievances remain unresolved, ready to go to arbitration pursuant to Article 15, while Defendant refuses to participate in the arbitration process.

## Count I – Breach of Contract

26. Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

27. Article 15 of the CBA requires that unresolved grievances be submitted to arbitration.

28. Plaintiff Union filed grievances 219 and 233 in August 2021.

29. The parties were unable to reach an agreement to resolve grievances 219 and 233.

30. Because no agreement was reached, Plaintiff Union moved grievances 219 and 233 to arbitration.

31. Defendant Employer refuses to participate in the arbitration of unresolved grievances 219 and 233.

32. By refusing to process grievance numbers 219 and 233 to arbitration, Defendant violated, and continues to violate, Article 15 of the CBA.

WHEREFORE, Plaintiff respectfully requests that the Court:

  A. Enter a Declaratory Judgment that the CBA calls for arbitration of grievances and that grievance numbers 219 and 233 must be processed through the procedure and to arbitration;

  B. Order Defendant to process grievances 219 and 233 and submit the grievances to arbitration;

  C. Grant Plaintiff its actual attorney's fees and costs incurred in bringing this action to cure the Defendant's further breach of the dispute resolution provisions of the CBA; and

  D. Such further and additional relief as the Court may deem just and proper.

        Respectfully submitted,

        PINSKY SMITH, PC

Dated: May 10, 2024  By *Erin L. Dornbos*

        Erin Dornbos
        146 Monroe Center St., NW- Suite 418
        Grand Rapids, MI 49503
        (616) 451-8496